MILLS v. WILLIAM DRUEKE CO.

1. Vendor and Purchaser—Redemption—Land Contracts.

In proceedings to redeem property purchased on a land contract which the vendor had declared forfeited and had foreclosed by summary proceedings, the judgment therein remaining in force, not appealed from, it was not a sufficient ground for equitable relief that the notice to quit served by the defendant vendor was defective.

2. Same—Laches—Equity.

Where complainant bought property on contract of a brewing company, to be occupied by a saloon business, which he so conducted as to be forced out of business by the municipality changing the boundaries of the district for saloons, and made default in the installments due on the contract, his interest in which he had assigned to a third party as security for a loan, after which the vendor brewing company foreclosed its rights, obtained judgment of ouster in summary proceedings and proceeded to carry out the contract with the assignee of the interest of complainant who acquiesced in the judgment, took no appeal and not until a year thereafter filed his bill to redeem, and where he made no tender of any sum due under the contract, he was not entitled to equitable relief.

Appeal from Mason; Withey, J. Submitted June 21, 1912. (Docket No. 82.) Decided October 7, 1912.

Bill by William H. Mills against the William Drueke Company and the Fred Miller Brewing Company for the redemption of certain property purchased under a land contract. From a decree for complainant, defendants appeal. Reversed.

*George E. Nichols* and *Charles A. Watt*, for complainant.

*J. T. Preston* (*W. W. Taylor*, of counsel), for defendants.

MOORE, C. J. This is an appeal from a decree rendered by the circuit court for the county of Mason, in chancery. The proofs were taken in open court.

The litigation grows out of a land contract which was given by the Fred Miller Brewing Company to Mr. and Mrs. Wiley in February, 1907. The latter part of that month complainant acquired a half interest of the interest of the Wileys in the contract. In March of the same year he acquired all their interest. To enable him to do this, he borrowed money from the William Drueke Company. To secure them, he assigned, in March, 1907, his interest in the Miller contract, and also gave them a chattel mortgage. Later Mr. Mills failed to make his payments and the Fred Miller Brewing Company commenced proceedings to get possession of the property, which proceedings resulted in a judgment in their favor November 15, 1909. The agent of the complainant delivered the keys to the building. The William Drueke Company then made the payments due on the contract, and a conveyance, according to its terms, was made to them in August, 1910.

On the 3d of December, 1910, this proceeding was commenced; the complainant claiming a conspiracy on the part of defendants to defraud him, and that he had a right to redeem from the land contract. The trial judge rendered a decree in his favor. In said decree it is provided as follows:

" (1) That the complainant or his assigns are entitled to redeem said premises within 90 days from the date of this decree by paying said William Drueke Company the sum of $4,860.90, upon which sum there shall be credited the rent of said premises at $105 a month for $17\frac{1}{2}$ months, together with the interest thereon at the rate of 5 per cent. upon said sums as collected from month to month, and complainant or his assigns shall also be entitled to all of the rents collected by said William Drueke Company or said Henry Huber since May 1, 1911, at the sum for which said building is now rented, or shall be rented, during said period; the said William Drueke Company being entitled to interest at 6 per cent. upon the balance due on the 1st day of May, 1911, under the terms and conditions of this decree.

" (2) Upon payment of the amount due said William Drueke Company, and at any time within 90 days from the date of this decree, said William Drueke Company and Henry Huber shall execute and deliver to complainant or his assigns a deed of said premises, free and clear of all liens of every kind and character, except the mortgage so given to said Fred Miller Brewing Company of $5,000, which mortgage said complainant shall assume and agree to pay, and shall give a bond in the sum of $2,000, to be approved by the register of this court, indemnifying said William Drueke Company and Henry Huber from any loss or damage by reason of any deficiency upon said mortgage, and subject to any leases of said building made prior to the hearing of said cause."

From this decree the defendants have appealed. It is the claim of complainant that the real estate is worth $11,000, while the defendants claim it is not worth nearly so much.

The solicitors for the complainant seem to think that the only issue raised by the appeal is whether the sum of $850 advanced to the complainant by the William Drueke Company should have been included in the sum necessary for complainant to pay to entitle him to redeem. The defendants, however, insist very strenuously that upon the record as made the bill of complaint should have been dismissed. They also insist that if they are wrong in this that a much larger sum than that fixed by the trial judge

should be decreed to be due. They insist complainant should be required to pay, in addition to the $5,000 mortgage, the sum of $6,261.25 and the damages sustained by the Drueke Company, amounting to $400, and interest and taxes since May 3, 1911.

In order to pass upon the questions involved intelligently, it will be necessary to consider more in detail the facts disclosed by the record. The land contract which was given to the Wileys by the Fred Miller Brewing Company, among others, contained the following provisions:

" The said parties of the second part further agree and covenant that they will pay all taxes, special or general, which have been assessed on the above-described premises since the first day of January, and also such as may hereafter be assessed thereon, whenever such taxes shall become due and payable by law, until the aforesaid purchase money be fully paid, in the manner above stated, and also to hold the said premises from the date hereof, as the tenant on sufferance of the said party of the first part, subject to be removed as tenant holding over, by process under the statute in such case made and provided, whenever default shall be made in the payment of any of the installments of purchase money or interest above specified, or of any of the covenants and agreements herein contained on the part of the second parties to be performed. * * * And do further covenant and agree that they will at all times from the date hereof, and until the said sum of nine thousand two hundred seventy-one and 35 / 100 dollars, with interest thereon, is fully paid, keep said premises open for a saloon business at all hours allowed by law, and will sell therein the beer, both keg and bottled, manufactured and sold by said Fred Miller Brewing Company, of Milwaukee, Wisconsin, party of the first part, its successors or assigns, and will neither directly or indirectly, nor permit any one else to, store, vend, keep for sale, sell or give away in or upon said premises, any beer other than that so manufactured and sold by the party of the first part, and will pay for all beer sold to them by the first party, its successors, representatives or assigns, on demand."

In the contract between the complainant and the Wil-

liam Drueke Company, among others, were the following
provisions:

"Whereas, it has been agreed between the said first
party and the said Clarence D. Wiley and Harriet L.
Wiley, that said first party shall and will purchase from
said Wileys all of their interest that they both or either of
them have in the real estate above mentioned, and also
their interest in the pool and billiard, bowling alley and
tobacco and confectionery business aforesaid, and that the
said Wileys execute and deliver fit and proper conveyance
and assignments to transfer the premises and business
aforesaid to said first party, so far as their present inter-
est extends; and whereas, said first party is desirous of
borrowing from said second party the sum of two thou-
sand dollars, to enable him, the said first party, to carry
out said agreement, and which said sum of two thousand
dollars hereby agrees to and does loan and advance to said
first party, agrees to secure the repayment by assignments
of all his interest in said above-mentioned contracts, and
to give a chattel mortgage upon all personal property in
said premises: Therefore, in consideration of the pay-
ments by said second party to said first party of the sum
of two thousand dollars, to him in hand paid, the receipt
whereof is hereby acknowledged and confessed, the said
first party to secure the repayment of the said sum of two
thousand dollars in the manner and at the time or times
hereinafter specified, does hereby sell, assign, transfer and
set over to said second party, its successors or assigns, all
of the right, title and interest, which said first party now
has in the premises and personal property above described,
and in the several contracts and assignments above men-
tioned, and all interests or rights that he may now or
hereafter acquire by reason of the purchase of the interests
of the said Clarence D. Wiley and Harriet L. Wiley or
either of them, and which said contracts and assignments
or copies thereof are hereto attached.

"And it is also agreed by the said first party, in consid-
eration of the loan of the sum of two thousand dollars as
aforesaid, that for the period of five years, from and after
the 1st day of May, 1907, said first party shall give all his
trade to said second party, and shall and will deal exclu-
sively with it for all goods usually sold by wholesale deal-
ers in wines, liquors, cordials, etc., and will not purchase
from any outside or third party any wines or liquors at
wholesale.

"And the said first party hereby further agrees to repay to said second party the said sum of two thousand dollars in monthly installments of fifty dollars per month in accordance with forty promissory notes collateral hereto and to said chattel mortgage. That in case said sum of two thousand dollars shall have been repaid before the expiration of the five years, during which the said first party agrees to buy from said second party as hereinbefore set forth, then said second party shall have a lien upon the premises and property aforesaid for the balance of said five (5) years to secure it for any profits, which second party may thereafter lose by reason of the fact (if it should so happen), that said first party should purchase wines, liquors, cordials, etc., from some other person, corporation or firm."

Upon procuring the interest of the Wileys, the complainant managed the saloon referred to in the various contracts. It was not long before he was involved in trouble with the municipal authorities, which resulted in his being arrested and convicted for violation of the liquor law and the passage of an ordinance putting him out of his business. The litigation found its way to this court. The case is reported as *Mills* v. *Common Council of City of Ludington,* 158 Mich. 493 (122 N. W. 1082). A reference to the opinion in that case will show that it was the conduct of complainant that led the council to put the saloon of the complainant outside of the district where saloons were allowed, and, of course, making it impossible for complainant to keep a saloon, as provided in the contract. In view of the situation, both of the defendants urged the complainant to sell his interest in the property to some one who could get a license; but he seemed possessed with the idea that he could recover a large sum in the way of damages against the city, and did not sell.

It is his claim, however, that he made an effort to sell, which was abortive because of the action of the brewing company. The most persuasive testimony he has offered in that regard is as follows: He testified:

"I wrote them I had a man that was coming over with me to pay them up what I owed them and pay me, so I

could get out of it. I told them I had a man there to come over to buy that. They telegraphed not to come. A letter followed. I received that letter of date January 20, 1910. This is the letter:

"'MILWAUKEE, 1–20–10.

"'Mr. W. H. MILLS, Care of Hermitage Hotel,
. "'Grand Rapids, Mich.

"Dear Sir:

"'Your letter of the 18th reached us this morning and we wired you: "Don't come. Save expenses. Letter follows."

"'You do not seem to fully understand the true situation. We cannot do anything for you, and for that reason we do not want you to spend the money to come to Milwaukee. In order to set you right we shall attempt to explain in a few words the true condition of your property, and would advise you to take this letter and show it to your lawyer or to any other well-meaning sincere friend of yours, and we are satisfied he will give you the same advice that we are giving you here.

"'The property was originally bought for Mr. Wiley on a land contract. Mr. Wiley later on sold his rights to you, and you later on assigned all your rights in the contract to the Drueke Company. The Drueke Company proceeded against you and have by process of law taken your place in this contract. They have paid us all the money that you were in arrears and are regularly paying us every month what you should have paid us, and when they get through paying, the property will of course be theirs. We cannot refuse their money because you assigned all your rights in the contract to them, and as long as they are willing to pay us what we have coming we must take their money. Therefore, if you know of a prospective buyer, who will pay you a price whereby you can get more than the total amount of our and the Drueke Company's claims amount to, we would advise that you see the Drueke Company and try to arrange a deal with them. We wish, however, to explain right here, that if you find a purchaser who is acceptable to the Drueke Company and also to us, we shall always insist upon the terms of the contract. In other words, we shall not accept our claim in a lump sum, but we want it paid monthly, and if there is ever a saloon in that place we want our beer sold. We have now given you the true situation and if you are trying to figure out that it is different, then we venture to say that you are certainly mistaken.

"'Yours very truly,
"'FRED MILLER BREWING CO.,
"'F. BENDEL.'"

It must be remembered that at this time the complainant had assigned all his interest in the land contract to the William Drueke Company, and to secure his indebtedness to them had given them a chattel mortgage upon the personal property in the saloon, which they had proceeded to foreclose. The complainant did not act upon the suggestion contained in the letter to go and see the Drueke Company. The record is bare of any evidence that complainant advised the Drueke Company that he had found a purchaser for the property. He never made any tender of the amount due upon the contract to any one. The nearest approach to it is what we have already quoted. There has been no refusal upon the part of the Fred Miller Brewing Company to carry out the contract, unless what is stated in the letter may be regarded as a refusal. And there is certainly nothing in the record to show any offer to carry out the contract with the William Drueke Company, and no refusal upon their part to perform the contract.

It now becomes necessary to retrace our steps. In September, 1909, the payments had not been made according to the terms of the contract, and the following paper was served upon the complainant:

"To WILLIAM H. MILLS:

"Take notice: In pursuance of the terms of a certain land contract between the undersigned Fred Miller Brewing Company, a corporation, as party of the first part, and Clarence D. Wiley and Harriet L. Wiley, as party of the second part, dated February 4, 1907, and which said contract was subsequently assigned to you by the said Wileys, the undersigned Fred Miller Brewing Company hereby declares said contract forfeited and void, for the reason that you have not complied with the terms thereof, having made default in the payment due us under said contract September 1, 1909, and we hereby demand that you deliver to the undersigned the possession of the premises therein described forthwith, which said premises are therein described as follows: The east forty-two (42) feet of the west forty-five (45) feet of lot No. two (2) of block No.

172 MICH.—26.

thirty-four (34) of the city of Ludington, in Mason county, Michigan, together with the easement of the stairway rights on the property of the I. O. O. F.

"Dated at Ludington, Michigan, September 3, 1909.

"Very truly yours,

"The Fred Miller Brewing Company,

"By H. G. Reek, its Attorney."

It is claimed by complainant that this was not a valid notice, and such was the finding of the circuit judge.

In this connection, it is necessary to state what followed. On the 7th of October, 1909, a complaint was made before a circuit court commissioner that Mr. Mills was holding the premises unlawfully. A summons was issued, returnable the 11th of October, at which time the complainant appeared by his attorney and pleaded not guilty. Upon the request of the attorney for the defendant, and by consent of the attorney for the complainant, the case was adjourned until October 30th. It was then adjourned by stipulation until November 9, 1909, at which time it was adjourned until November 15th at 10 o'clock. On the 15th of November the parties were in court by their counsel, and the case was tried; the defendant introducing no testimony. The circuit court commissioner found there was due the complainant $400, and rendered a judgment of restitution, and for the amount due and for the costs, amounting to $12.20. No appeal was ever taken from this judgment; and on November 22, 1909, the agents of Mr. Mills delivered to the attorney for the Miller Brewing Company the 15 keys which belonged to the Mills building, and the complainant has never since been in possession of any part thereof.

After the Miller Brewing Company obtained the above-mentioned judgment, the William Drueke Company made payments upon the land contract, reducing the amount due thereon to $5,000, and a deed was made to them, and a mortgage was given back for the $5,000, since which time, up to the filing of the bill of complaint, the William Drueke Company was in possession. The bill of complaint

was filed December 3, 1910, more than a year after the Miller Brewing Company parted with their interest in the property, except the $5,000 mortgage interest.

To recapitulate the important features of the case, it was the conduct of the complainant that made it impossible for him to carry out the provisions of the contract in relation to the keeping of a saloon in the building, and the purchase of beer and liquors from the defendants. See *Mills* v. *Common Council of City of Ludington*, *supra*. The complainant, when an action was brought against him as a tenant holding over unlawfully, did not, so far as the record shows, defend upon the ground that the notice given by the Fred Miller Brewing Company was insufficient, but pleaded not guilty, and when judgment was rendered against him did not appeal said judgment, but his agents delivered up the keys to the building. At no time before the brewing company had made a deed to the assignee of Mr. Mills and the holder of the land contract did he call the attention of the brewing company to the fact that he desired to pay up the amount due upon the contract; and when he was referred by the brewing company to the Drueke Company he did not confer with them, and at no time did he indicate to them that he desired to pay up the contract. He has not at any time tendered to any of the parties in interest the amount due upon the contract. He delayed filing the bill of complaint for more than a year after the parties had reason to suppose that he acquiesced in the judgment rendered by the circuit court commissioner.

It is not necessary to decide the questions of whether the agreement to purchase beer of the brewing company and wines and liquors of the Drueke Company are valid agreements; neither of those parties are seeking to enforce the agreement. The contract, such as it is, was voluntarily entered upon by the complainant. He has not upon his part performed any of the essential parts of it. If the principle that one who appeals to a court of equity must

do equity is to apply to this case, then the complainant has no standing in this court.

It is not necessary to consider the other questions raised by the solicitors. The decree of the court below is reversed, and the bill of complaint is dismissed, with costs of both courts.

STEERE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.