SCHOENFELD *v.* KEMTER.

SPECIFIC PERFORMANCE—LAND CONTRACTS—FORFEITURE—EQUITIES.
In proceedings by the assignee of the vendee for the specific performance of a land contract, where the record shows that while plaintiff was in default a judgment in proceedings before the circuit court commissioner was rendered against him, of which he had notice, that he neither paid the judgment nor took an appeal, that later he was dispossessed by writ of ouster, that he took no action until nearly three years later, when the present proceedings were instituted, *held,* to show no equities in the case in behalf of plaintiff, and that the bill should have been dismissed.

Appeal from Wayne; Davis (Frank D. M.), J., presiding. Submitted June 11, 1920. (Docket No. 75.) Decided September 30, 1920.

Bill by Israel Schoenfeld against Freda Kemter and others for the specific performance of a land contract. From a decree for plaintiff, defendants Kemter appeal. Reversed, and bill dismissed.

*Fixel & Fixel,* for plaintiff.

*Millis, Griffin, Seely & Streeter (George B. Murphy,* of counsel), for appellants.

MOORE, C. J. The bill of complaint in this case was filed September 1, 1917. This is an appeal from a decree granting plaintiff the specific performance of a land contract dated June 23, 1910, upon the payment within 90 days of the sum of $1,186.37, the vacating of any deed or deeds given by defendants Kemter to William J. Stocker, Morris Zack or Julius Berman, and setting aside and vacating a chancery decree, as well as a judgment obtained against plaintiff in summary proceedings.

On June 23, 1910, Emma Krell was the owner of a certain parcel of land commonly known as 116 Wilkins street in the city of Detroit. She sold the premises under a contract in writing to Morris Srere, which contract included the ordinary terms and covenants of a land contract, among which were provisions for the forfeiture of the vendee's rights in case of default. The selling price was $1,500, cash payment of $200, and the balance of $1,300 was to be paid in semi-annual payments from the date of contract of $25 or more, the entire principal sum to be paid within 5 years from date, with interest at the rate of 6% until due, and 7% thereafter payable quarterly. Possession

was given the vendee. By various conveyances the plaintiff became the owner of this contract.

Emma Krell, the vendor in the land contract, died in December, 1913. Her estate was later probated. Defendant Freda Kemter is the daughter of Emma Krell. Theodore Kemter is the husband of Freda Kemter. Under the will of her mother Freda Kemter inherited $4,000. In part satisfaction of this inheritance the vendor's interest in the land contract in question valued at $1,554.99 was assigned to her in the probate proceedings. This was done in July, 1914. In the spring of 1914 plaintiff was notified that defendant Freda Kemter had succeeded to the rights of her mother as vendor in the contract. May 22, 1914, there was paid on behalf of plaintiff to Mr. Seely, attorney of the estate, on the contract $32.99. Thereafter no payments were made on the contract. Defendants Kemter started summary proceedings for possession of the land before Commissioner May in Detroit on December 8, 1914. Defendants claim that prior to that time notice was given to plaintiff through the mails that if payments were not made the contract would be forfeited and that they were not made. The return day of these proceedings was December 12th. Plaintiff was made a defendant in said cause and with him was joined the tenant occupying the cottage in question, a Mrs. Wilson. It is claimed that plaintiff could not be found, and substitutional service was obtained on plaintiff December 11th, by service on Mrs. Wilson. One of the defendants in said cause was before Commissioner May in the court room. On the return day the case was heard and judgment passed against the defendant in the sum of $88.73 rent due and $4.50 costs. Plaintiff was brought into court under the name of "M. Schoenfeldt," and it is claimed now that this is fatally defective, though no objection was made at the time of the hearing on that ground.

Plaintiff's version of what happened in the court room is as follows:

"I told the judge to adjourn the case until I got my lawyer. I didn't intend to go through with the proceeding at that time. * * * I never tried a case without a lawyer. I did not understand the things that were in that summons, the paper that was served on me. I did not understand everything the judge told me. I did not have an interpreter there. * * * I don't remember the day I went down to Commissioner May's office when the proceeding was had to put me out of the property. I went a couple of times. I don't remember. I remember the time they put the notice on the door and I went up to see if I could read it, and of course I couldn't read and I got somebody to tell me that there was a case against me the next day, so I came down and they had the case. He told me where I had to go. I had somebody read it for me and he told me where to go. I went to the attorneys and asked them to read it for me and they told me what it said. * * * After I was down before Commissioner May, Mr. May told me that I would have to pay $92 and some cents. I paid it once and I wasn't going to pay it over again."

For some reason which is not very satisfactorily explained the files in the proceeding before the circuit court commissioner were not produced by the commissioner, but he was sworn as a witness; he testified in part:

"I was one of the circuit court commissioners for Wayne county in December, 1914. I have been commissioner about fourteen years. I am still a commissioner.

"*Q.* I show you a certified copy of file No. 48533, that is the calendar entries, a case that was tried before you as circuit court commissioner. The file in the case is missing. The complaint was that there were certain arrears due on a land contract. Did you find a verdict in favor of the plaintiffs there?

"*A.* Yes, for $88 and some cents. The plea is not guilty. I do not recall the case personally now. If that action was based on the fact that the land con-

tract was being canceled, there would have to be a declaration filed for that, together with a proof of service that was sworn to there in court that morning, or else the proof attached. That is our universal practice on a claim for arrears on a land contract. I have no recollection of this particular case, but that is done in every case for arrears on a land contract. So that it would have to be in writing and service would have to be shown by affidavit or testimony before me, unless there was a waiver some way or other. I cannot tell by looking at the instrument before me (a certified copy of the calendar entries) whether it was a proceeding under a land contract. The plea must be guilty or not guilty. I entered a plea in all cases, if the man does not plead. The statute requires that. Then I proceed with the proofs. In this case I did proceed with the proofs. There is such a thing as a special appearance before me in my court. Parties come in and put in a special appearance. I do not see any entry in that certified copy of the calendar entries that there was a special appearance in this case. If there had been a special appearance, I would have entered it."

No appeal was ever taken from the judgment and in the same month a writ of restitution was issued and Mr. Schoenfeld was ejected from the premises and has never occupied them since, and never made a claim personally to the defendants that he had any interest in the premises until this chancery suit was commenced almost three years later. His claim is that the delay occurred because the lawyers he tried to get interested, and he names several of them, did nothing in his behalf until he secured the services of his present attorneys.

March 16, 1916, Mrs. Kemter deeded the property to Mr. Zack at the request of Mr. Berman to whom she had sold it before that for $1,600. September 1, 1917, a chancery proceeding was begun by the Kemters to remove a cloud from the title growing out of the fact that the record showed Mr. Schoenfeld some years before had conveyed an interest in his land

contract which was of record. Mr. Schoenfeld was made one of the defendants. An unsuccessful effort was made to get personal service on him, an affidavit was filed, an order was made which was published in a newspaper to bring in the defendants. He did not appear and later a decree was entered against him from which no appeal was ever taken. It is the claim of the defendants that the judgment before the commissioner and the decree in the chancery case are *res adjudicata* as to the present proceeding. It is the claim of the plaintiff that both were void for want of jurisdiction and the chancellor so held.

It is the claim of the plaintiff that the property had increased greatly in value when he was ejected so that he had a very substantial interest in the property. The defendants deny this claim and say plaintiff allowed the cottage that was on the premises to become badly out of repair and that the property had increased in value very little over the consideration named in the land contract when Mr. Schoenfeld was ejected.

Evidence that is persuasive of defendants' contention is found in the fact that the property came to her from the estate and that she soon sold it for $1,600. It is doubtless true that, when the bill in this case was filed, due to the phenomenal increase in the value of Detroit property, the property in controversy was worth $3,000 to $4,000. This fact may explain why a proceeding which, to say the least, had remained dormant took on new life.

A great many interesting legal questions are presented and argued by counsel. In our opinion the facts in the case which are not in serious dispute should dispose of the case. Briefly stated they are these: The last payment on the contract was made in May, 1914. The plaintiff knew when the others came due. A letter was sent him that he must pay or the contract would be forfeited. Forfeiture pro-

ceedings were commenced in December, 1914. He had knowledge of these proceedings and was present and had some talk with the commissioner on the return day. A hearing was had and a judgment was rendered of which he had knowledge. He testified: "Mr. May told me that I would have to pay $92 and some cents. I paid it once and I was not going to pay it over again." He neither paid nor did he take an appeal from the judgment. Within a month a writ of ouster was issued and the possession of the premises was delivered to Mrs. Kemter, who a little later sold the property, and a little later gave a deed of it. In the meantime the plaintiff made no offer of other payments. While plaintiff claims he tried to get attorneys to pursue the litigation for him further, Mrs. Kemter and the other defendants were none of them advised of this, and it is not until nearly three years later and after property values have greatly changed in Detroit that this proceeding is brought. There can be no doubt that a good faith effort was made to forfeit this contract because of plaintiff's failure to perform its conditions. Plaintiff was advised of this effort.

The proceeding was before an experienced and able commissioner. The files are not in the record to show just what occurred before him. A judgment followed. Later came a writ of ouster and then a long period of silence as before stated. There are no equities in the case presented by the plaintiff. See *Mills* v. *William Drueke Co.*, 172 Mich. 394; *Tattan* v. *Bryant*, 198 Mich., at p. 523.

The decree is reversed and the bill of complaint is dismissed with costs of both courts.

STEERE, BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.